## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

No. 13-1865
_____

**UNITED STATES OF AMERICA**
Appellee

v.

**JOSEPH CARAMADRE**
Defendant - Appellant
_____

**ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**
_____

**REPLY BRIEF FOR APPELLANT
JOSEPH CARAMADRE**
_____

                                                    **Randy Olen, Esq.
478A Broadway
Providence, RI 02909
(401) 274-1400
(401) 274-2480 (fax)**

**Date: July 29, 2013**

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................ iii

ARGUMENT

    I.    THE DISTRICT ERRED IN ORDERING MR. CARAMADRE DETAINED PENDING SENTENCING ................................... 1

Conclusion ............................................................................................... 6

Certificate of Compliance ....................................................................... 7

Certification ............................................................................................. 8

# ARGUMENT

## I. MR. CARAMADRE SHOULD BE RELEASED FROM CUSTODY PENDING SENTENCING, AS HE IS NEITHER A FLIGHT RISK NOR A DANGER TO THE COMMUNITY

In its brief, the Government erroneously argues that Mr. Caramadre presents both a danger to the community and a flight risk. In so doing, it ignores relevant caselaw presented in Mr. Caramadre's opening brief, and misconstrues both the facts and the law applicable to this issue.

As a threshold matter, the Government plays fast and loose with the testimony and evidence presented at the hearing. For example, the Government states that "the Court properly noted that the more recent medical opinion, to the effect that *he is no longer a suicide risk*, rests largely on [Mr. Caramadre's] own self-serving statements, and that he is unworthy of belief." Government Br. at 4. By sleight of hand, the Government seeks to introduce evidence that Mr. Caramadre was at any time "a suicide risk". In fact, the record is clear that Mr. Caramadre *never at any time* presented any "suicide risk". The evidence demonstrates only that Mr. Caramadre, for a fleeting moment, experienced suicidal ideation. As Dr. Greer and Dr. Zlotnick both pointed out, "suicidal ideation" is no more than having the thought enter one's mind. Dr. Greer testified that this is a common phenomenon, occurring in at least half the general population. The

1

Government, however, to suit its own purposes, attempts to portray this as a "suicide risk". It is clear beyond dispute that Mr. Caramadre never presented a "suicide risk"; the Government's characterization is consistent with its attempt to invent this issue in order to distract the Court's attention from the clear fact that Mr. Caramadre presents neither a danger to himself or the community, or a flight risk.

Similarly, the Government mischaracterizes the evidence by noting that "his doctor [was] concerned at the time about his suicidal ideation". Government Br. at 7. In fact, Dr. Xavier did no more than to note that Mr. Caramadre himself had advised her – at the insistence of his former attorney – that the thought had crossed his mind. Her treatment notes do not express such "concern", noting only that he reported the incident. More importantly, her notes show that he lacked suicidal intent. See App. 125. The dramatic mischaracterization of the evidence by the Government is further evidence that it is forced to rely on what Mr. Caramadre characterized in his opening brief as a "red herring", rather than focus on the relevant considerations traditionally utilized by courts to determine danger to the community and flight risk. The reason for this, of course, is clear; Mr. Caramadre presents neither.

### *Danger To The Community*

The Government bases its argument that Mr. Caramadre presents a danger to the community on three factors. The first is that the reports of the two psychiatrists – which both established that Mr. Caramadre presents ***no*** risk of suicide – were based largely on Mr. Caramadre's "self-reporting" to the doctors. The Government ignores the fact that Mr. Caramadre's treating psychologist, Dr. Zlotnick, testified that the entire time that she has treated him Mr. Caramadre presented no risk of suicide. Similarly, Dr. Greer, whose primary professional activity has been to provide risk assessments of this type for over 22 years, involving thousands of cases, reached the same conclusion, one in which he was "very very confident". Moreover, Dr. Greer testified that self-reporting comprises only a part of the information underlying his assessment. The Government then notes Mr. Caramadre's "long history of severe depression", which it fantasizes "clearly enhances the risk that he will try to harm himself". Government Br. at 8-9. The Government offers no credentials in support of its medical opinion; one is left to wonder why its assessment should be considered as having more validity than that of the two professionals who have devoted their lives to this discipline.

Finally, the Government attempts to support its belief that Mr. Caramadre presents a danger to the community on its belief that he "has taken a number of steps in this case that have been borderline irrational and against [his] self-interests." Government Br. at 9. The Government makes no attempt to show how this opinion somehow makes Mr. Caramadre a danger to the community. The fact that the Government, and the District Court, may believe that his attempt to withdraw his guilty plea was irrational merely highlights the fact that the true reason for Mr. Caramadre's detention was with the Court's, and the Government's, consternation over his attempt to withdraw his guilty plea; which, in fact, he had every right to do. Mr. Caramadre presents no danger to himself or anyone else in the community.

### *Flight Risk*

The Government further maintained that Mr. Caramadre presented a flight risk. It did so on based on the elicitation of four factors. First, it stated that the fact that Mr. Caramadre potentially faces a "significant sentence" makes it likely that he will flee. The Government's contention ignores caselaw presented in Mr. Caramadre's opening brief, which plainly demonstrates that potential sentences far in excess of the 10 year sentence that Mr. Caramadre faces do not give rise to a presumption of flight. See Defendant/Appellant's Brief at 9-11.

As a second reason, the Government opines that Mr. Caramadre presents no legitimate appellate issues. To the extent that this issue is relevant to the analysis, the Government is simply incorrect. Despite the Court's and the Government's distaste for Mr. Caramadre's attempt to withdraw his guilty plea – a distaste which was plainly apparent in the record – Mr. Caramadre in reality presents highly meritorious issues regarding the motion to withdraw his plea. In addition, a number of other issues are present which similarly provide meritorious reasons for reversal. These include the Court's allowance of Rule 15 depositions of terminally ill individuals prior to the issuance of any criminal charges; the denial of a motion to sever from his co-defendant, whose foolhardy attempt to represent himself seriously prejudiced Mr. Carmadre's defense; and other similarly noteworthy appellate issues. The Government's contention that Mr. Caramadre has no appellate issues could not be further from the truth.

As a third reason, the Government notes that Mr. Caramadre has "considerable financial resources". In so noting, the Government completely ignores the evidence of his extensive family ties, all of whom rely on these resources. More to the point, examination of the record in its entirety clearly reveals that Mr. Caramadre's ties to his family and his community, as well as his longstanding history of charitable endeavors, clearly demonstrate that

under no circumstances would Mr. Caramadre flee; in truth, the Government itself is aware of this fact.

Finally, the Government's fourth "reason" to consider Mr. Caramadre a flight risk is its belief that he is a "resourceful con artist". This notion hardly deserves comment. As a technical matter, it would mean that anyone convicted of a financial crime would necessarily be a flight risk. What the contention does reveal, however, is the Government's disdain for Mr. Caramadre personally, which is the real reason for its attempt to characterize Mr. Caramadre as a flight risk, when it is objectively apparent to all that he presents no such risk.

## **CONCLUSION**

For the foregoing reasons, the Court should reverse the decision of the District Court, and order Mr. Caramadre's immediate release pending sentencing.

Respectfully Submitted,
Joseph Caramadre,
By his attorney,

/s/ Randy Olen

_____

Randy Olen, Esq.
478A Broadway
Providence, RI 02909
(401) 274-1400
(401) 274-2480 (fax)

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief is in compliance with Rule 32 in that it is formatted in Times New Roman, 14 point font and contains 1, 214 words.

/s/ Randy Olen
_____

## **CERTIFICATION**

      I hereby certify that on this 29th day of July, 2013, I caused to be delivered, via electronic delivery, a true copy of the within **Reply *Brief*** to Donald C. Lockhart, Esq., John P. McAdams, Esq., and Lee H. Vilker, Esq. at the U.S. Attorney's Office, 50 Kennedy Plaza, 8th Floor, Providence, RI 02903.

                                               /s/ Randy Olen
                                               _____